UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD SHARIF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 07 C 1690 |
| v. | ) |
| | ) |
| MICHAEL CHERTOFF, Secretary U.S. | ) |
| Department of Homeland Security, EMILIO | ) Honorable Charles R. Norgle |
| T. GONZALES, Director U.S. Citizenship and | ) |
| Immigration Services, F. GERALD HEINAUER, | ) |
| Director U.S. Citizenship and Immigration | ) |
| Services Nebraska Service Center, and ROBERT | ) |
| BLACKWOOD, Adjudication Branch Chief | ) |
| DHS/USCIS Chicago District Office, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Charles R. Norgle, District Judge

For the following reasons, the court dismisses this case for lack of subject matter jurisdiction.

**I. BACKGROUND**

**A. Facts**

Plaintiff Richard Sharif ("Sharif") is a citizen of the United States who resides within the Northern District of Illinois. Defendants hold various leadership positions within the United States Department of Homeland Security ("DHS") or the United States Citizenship and Immigration Services ("CIS").

1

In his Mandamus Complaint for Declaratory and Injunctive Relief, Sharif alleges the following facts. During February 2006, Sharif initiated a 129-F Fiancé Petition on behalf of Ms. Barrah Khesfha ("Khesfha"). CIS employees in Chicago instructed Sharif to complete a 129-F Fiancé Petition Form and mail it, along with a $170 processing fee, to the Nebraska Service Center ("NSC") of the CIS. Sharif complied, and on February 28, 2006, CIS issued a Form I-797C Notice of Action acknowledging receipt of Sharif's 129-F Petition.

On July 20, 2006, Sharif sent a letter to the NSC inquiring about the status of his 129-F Fiancé Petition. The NSC did not respond to this inquiry. Sharif therefore enlisted the aid of United States Congressman Luis Gutierrez. On September 8, 2006, the Congressional Liason Office of the NSC indicated that Sharif's Fiancé Petition had been sent to a security unit for review. Five days later, Defendant F. Gerald Heinauer ("Heinauer"), acting Director of the NSC, sent a letter to Sharif advising Sharif that Khesfha was the subject of background security checks. On March 7, 2007, Heinauer sent another letter to Sharif indicating that the NSC was actively processing the case, and that every effort would be made to complete Kheshfa's background investigation as soon as possible. Heinauer did not indicate when the NSC might complete this process. Sharif alleges that since his Fiancé Petition has been pending since February 2006, this delay is unacceptable and unreasonable.

## B. Procedural History

Sharif filed his Complaint on March 27, 2007. He requests, *inter alia*, that the court issue him mandamus relief compelling Defendants to immediately adjudicate and approve his Fiancé Petition. On May 31, 2007, the court ordered the parties to brief the issue of whether the court has subject matter jurisdiction to adjudicate this case. Both parties have timely responded to the court's order. The matter of jurisdiction is fully briefed and before the court.

## II. DISCUSSION

Sharif actually seeks two separate forms of relief in this case. First, Sharif asks that the court order CIS to accelerate the pace at which it processes his Fiancé Petition. Second, Sharif asks that the court order CIS to approve his Petition. As a threshold matter, the court must first address the issue of whether Congress, in enacting the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), stripped the court of jurisdiction to adjudicate either one of these requests.

As to Sharif's second request, there is no question that the court is without jurisdiction to compel CIS to approve his Petition. Whether to grant a Fiancé Petition is a discretionary decision of the Attorney General, pursuant to 8 U.S.C. § 1184(d). CIS issues nonimmigrant visas for temporary admission to the United States in categories such as temporary visitor for business, temporary visitor for pleasure, student, fiancé, or temporary worker. See 8 U.S.C. § 1101(a)(15). Immigrant visas (green cards) permit holders to reside and work in the United States indefinitely. See 8 U.S.C. § 1153. "The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe . . . ." 8 U.S.C. § 1184(a). Under section 1184(d) of the Immigration and Nationality Act, a nonimmigrant visa may be issued to the alien fiancé of a United States citizen to allow the alien to enter the United States to conduct a valid marriage within ninety days of entry. See 8 U.S.C. § 1184(d); 8 U.S.C. § 1101(a)(15)(K); 8 C.F.R. § 214.2(k). Pursuant to § 1184(d), the United States consular official abroad shall not issue a fiancé visa until DHS approves a petition submitted by a United States citizen. 8 U.S.C. § 1184(d). DHS may approve of such a petition only after receiving satisfactory evidence that the parties have previously met within two years

before the petition was filed, have a bona fide intention to marry, and are legally able and actually willing to conduct a valid marriage within ninety days of the alien's arrival in the United States. Id.

Section 1184(d) therefore falls within the parameters of 8 U.S.C. § 1252(a)(2)(B)(ii). In 1996, Congress added 8 U.S.C. § 1252(a)(2)(B)(ii) to the immigration code as part of IIRIRA. Pub. L. No. 104-208, Division C, § 306(a), 110 Stat. 3009-546, 3009-607 (1996). Section 1252(a)(2)(B)(ii) provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review –
>
> (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be the discretion of the Attorney General, other than the granting of [asylum] relief under section 1158(a) of this title.

Section 1252(a)(2)(B)(ii) therefore clearly strips the courts of jurisdiction to pass on discretionary decisions of the Attorney General regarding immigration, including decisions regarding whether to approve a Fiancé Petition.

There is thus no question that the court is without jurisdiction to review whatever decision CIS ultimately makes regarding Sharif's Petition. The only question for the court is whether it has jurisdiction to force CIS to adjust the pace at which it makes this decision. Counsel for both parties have not presented the court with Seventh Circuit precedent squarely on point, and the court's research has revealed no such cases. In fact, the court can find no federal appellate court cases directly addressing this issue. The court therefore turns to other district courts for guidance. District courts across the country, however, have struggled with the issue of

4

whether courts have jurisdiction to force CIS to accelerate the speed at which it processes individual cases. In fact, district courts are very much split on this matter. The court will therefore undertake an analysis of some recent district court decisions addressing this issue.

In Fu v. Gonzales, a Northern District of California court determined that because CIS had delayed processing Plaintiffs' applications for permanent residency for over three years, the court had jurisdiction under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, to determine whether this delay was unreasonable. No. 07-207, 2007 U.S. Dist. LEXIS 39623 (N.D. Cal. May 17, 2007). The Fu court reasoned that an overly restrictive reading of 8 U.S.C. § 1252(a)(2)(B)(ii) "would render toothless all timing restraints, including those imposed by the APA, which would amount to a grant of permission for inaction." Id. at *16 (internal quotation marks and citation omitted). In Koren v. Chertoff, a District of Connecticut court determined that, although decisions to ultimately deny or grant aliens permanent residency are "wholly discretionary" on the part of the Attorney General, "the decision of whether to actually *adjudicate* an adjustment application . . . is not discretionary." No. 07-157, 2007 U.S. Dist. LEXIS 35128 (D. Conn. May 14, 2007). The Koren court found that the pace of adjusting an alien's status was not discretionary, and therefore "§ 1252(a)(2)(B)(ii) does not divest this court of subject matter jurisdiction over Plaintiffs' claim that the adjudication of their applications for adjustment of status has been unreasonably delayed." Id. at *15.

A Western District of Oklahoma court found that where an alien had applied for an adjustment of status, and two years had passed with no action by CIS, "the jurisdiction stripping provision of § 1252(a)(2)(B)(ii) does not divest this Court of jurisdiction over Plaintiffs' claims. The Defendants had a ministerial nondiscretionary duty to adjudicate [Plaintiff's] application

within a reasonable time." Linville v. Barrows, No. 06-1430, 2007 U.S. Dist. LEXIS 40537, at *9 (W.D. Okla. April 19, 2007). Other district courts have followed similar lines of reasoning. While "[t]he ultimate decision whether or not to adjust an alien's status . . . is undisputably within the discretion of the Attorney General," more than one district court "cannot accept the argument that, simply because adjustment of status is a form of discretionary relief, there is no limit to the length of time the USCIS may take in processing applications. The duty to act is no duty at all if the deadline is eternity." Tang v. Chertoff, No. 07-10231, 2007 U.S. Dist. LEXIS 46030, at *1-2, *6 (D. Mass. June 26, 2007); Duan v. Zamberry, No. 06-1351, 2007 U.S. Dist. LEXIS 12697, at *9 (W.D. Penn. Feb. 23, 2007) (a determination that § 1252(a)(2)(B)(ii) precluded judicial review of the pace at which CIS processed applications "would amount to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters."); Ma v. Gonzales, No. 07-122, U.S. Dist. LEXIS 41103 (W.D. Wash. June 5, 2007); Kim v. Ashcroft, 340 F. Supp. 2d 384, 393 (S.D. NY 2004) ("Were it otherwise, the CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so.").

On the other hand, numerous district courts have interpreted § 1252(a)(2)(B)(ii) to strip courts not only of jurisdiction to review ultimate decisions of the Attorney General on immigration matters, but to also strip courts of jurisdiction to review the time frame during which the Attorney General makes these decisions. In Safadi v. Howard, the alien Plaintiff sought mandamus relief to compel Defendant to immediately adjudicate his application for permanent resident status. 466 F. Supp. 2d 696 (E.D. Va. 2006) (Ellis, J.). Plaintiff filed his application with CIS in November 2002, but due to various background checks undertaken by the

FBI and the Interagency Border Inspection System, his application had not yet been adjudicated approximately four years later. Id. at 697-98. Plaintiff asserted that this delay was unreasonable, and asked the court to compel Defendant to adjudicate his application immediately. Id. at 698. Defendant filed a motion to dismiss for lack of subject matter jurisdiction, and the court identified the issue as follows.

> The question then is whether [8 U.S.C. § 1252(a)(2)(B)(ii)'s] exclusion of any discretionary 'action' from judicial review serves to preclude judicial review of the pace or nature of the process USCIS has implemented to execute its discretionary authority to adjust plaintiff's status. In other words, the question is whether the term 'action' encompasses the pace at which USCIS processes an adjustment of status application.

Id. The Safadi court answered this question in the affirmative. This court finds Judge Ellis' reasoning persuasive.

> [I]t is clear that 'action' in § 1252(a)(2)(B)(ii) encompasses the *entire* process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds ... Surely Congress, in passing § 1252(a)(2)(B)(ii) did not intend to preclude from judicial review all discretionary actions involved in the processing of an adjustment application except for the pace of such processing. Indeed, to suggest that Congress intended to except the pace of the process from the general exclusion of judicial review is belied by the complete absence of any statutory time limits on the processing of adjustment applications. Instead, § 1255(a) simply provides that the adjustment process is subject to the regulations that USCIS may elect to prescribe. Nowhere in the statute is there any reference to time limits for the process of adjustment of status applications or the need for expedition in doing so. The absence of any such reference is consistent with, and confirmatory of, Congress' intent to confer on USCIS discretion over not just the adjustment of status decision, but also the process employed to reach that result, and to exclude from judicial review the exercise of all that discretion.

Id. at 699 (internal citations omitted).

A Southern District of Florida court followed Judge Ellis' reasoning in dismissing Plaintiffs' action for mandamus relief. Grinberg v. Swacina, 478 F. Supp. 2d 1350 (S.D. Fl.

2007). In Grinberg, the alien Plaintiff sought a court order compelling CIS officials and others to immediately adjudicate his application for adjustment of status. Id. at 1351. The court found that, pursuant to § 1252(a)(2)(B)(ii), the court was without jurisdiction to adjudicate the case. Id. at 1353.

> [A]t issue between the parties is whether Congress intended the pace at which an adjustment of status application is processed to come within the ambit of a discretionary, and hence non-reviewable 'action.' In granting Defendants' Motion to Dismiss, this Court finds that Congress intended to include the pace within its discretionary function.

Id. (citing Safadi, 466 F. Supp. 2d at 698.) Numerous other district courts have followed similar lines of reasoning. "The court lacks subject matter jurisdiction of [Plaintiff's] claim concerning the delay in processing his adjustment status application because it is a discretionary action by the Attorney General pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii)." Bugulu v. Gonzales, No. 06-756, 2007 U.S. Dist. LEXIS 32136 (W.D. Wisc. May 1, 2007); see also Li v. Chertoff, 482 F. Supp. 2d 1172 (S.D. Cal. 2007); Rogatch v. Chertoff, No. 06-541, 2007 U.S. Dist. LEXIS 28450 (D. R.I. April 17, 2007); Zhang v. Chertoff, No. 06-66, 2007 U.S. Dist. LEXIS 44393 (W.D. Va. June 19, 2007) (citing Safadi and Grinberg); Zhang v. District Director, USCIS, No. 07-362, 2007 U.S. Dist. LEXIS 44705 (D. N.J. June 20, 2007); Serrano v. Quarantillo, No. 06-5221, 2007 U.S. Dist. LEXIS 26310 (D. N.J. April 9, 2007) (citing Safadi); Romanovich v. Gonzales, No. 07-60224, 2007 U.S. Dist. LEXIS 33161 (S.D. Fl. April 4, 2007) (citing Safadi and Grinberg); Qui v. Chertoff, No. 07-123, 2007 U.S. Dist. LEXIS 35334 (D. N.J. May 15, 2007) (citing Safadi and Grinberg); Espin v. Gantner, 381 F. Supp. 2d 261 (S.D. N.Y. 2005). Finding the courts' reasoning in these cases persuasive, this court takes the position that §

1252(a)(2)(B)(ii) strips courts of jurisdiction to order CIS to adjust the pace of its adjudication of cases.

The court notes that the power of Congress to establish jurisdictional limits for the lower federal courts is a bedrock principle of constitutional law. See Lauf v. E. G. Shinner & Co., 303 U.S. 323, 330 (1938) ("There can be no question of the power of Congress thus to define and limit the jurisdiction of the inferior courts of the United States."); Kline v. Burke Constr. Co., 260 U.S. 226, 234 (1922) ("Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution."); Sheldon v. Sill, 49 U.S. 441 (1850). Congress, in its collective wisdom, has determined that the lower federal courts have no jurisdiction to adjudicate immigration matters that are within the discretion of the Attorney General. As the better reasoned of the above cited cases makes clear, the pace at which CIS adjudicates its cases is very much within the Attorney General's discretion.

The court therefore holds that it has no jurisdiction to compel CIS to alter the pace in which it processes Sharif's Fiancé Petition. The court notes that Sharif's Petition has only been pending since February 2006. In Safadi, the Plaintiff's application for adjustment of status had been pending for approximately four years, and the court did not find that delay unreasonable. Safadi, 466 F. Supp. 2d at 700. Judge Ellis, however, left the door open for the possibility that, "where the delay was so unreasonable as to be tantamount to a refusal to process the application," the court might have jurisdiction. Id. at 700-01. Because Sharif's Petition has only

been pending for approximately a year and a half, this court cannot say that CIS has essentially refused to process this Petition. In fact, Sharif admits that the NSC is actively reviewing the case. Compl., ¶ 19 (citing a letter from Heinauer which indicates that the NSC is processing the case). Congress has spoken, and in so doing it has stripped the court of jurisdiction to adjudicate this case.[1]

### III. CONCLUSION

For the foregoing reasons, this case is dismissed with prejudice for lack of subject matter jurisdiction.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: July 18, 2007

---

[1] Sharif asserts that the court has jurisdiction under 8 U.S.C. § 1329, 28 U.S.C. §§ 1331 and 1361, and the Administrative Procedures Act. Plaintiff's citation of these statutes cannot establish jurisdiction in this case. Section 1252(a)(2)(B)(ii) clearly provides that the court does not have jurisdiction to hear this matter "*notwithstanding any other provision of law.*" (Emphasis added.) Congress could not have been more clear on this issue.